## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

------------------------------------------------------------

SAMANTHA LIVINGSTON,          |

           Plaintiff,     |

   -against-          |     **PLAINTIFF DEMANDS**

                  |     **TRIAL BY JURY**

BOARDWALK 1000, LLC *d/b/a Hard Rock*  |

*Hotel & Casino Atlantic City*; and     |     Civil Action #: 25-17097

HARD ROCK ATLANTIC CITY, LLC *d/b/a*  |

*Hard Rock Hotel & Casino Atlantic City*  |     **CIVIL COMPLAINT**

           Defendant.    |

------------------------------------------------------------

Plaintiff, Samantha Livingtson (hereinafter referred to as "Plaintiff"), by and through her attorneys, The Derek Smith Law Group, PLLC, hereby allege Defendant, Boardwalk 1000, LLC, doing business as Hard Rock Hotel & Casino Atlantic City and Defendant, Hard Rock Atlantic City, LLC, doing business as Hard Rock Hotel & Casino Atlantic City, discriminated against, subjected to hostile work environment, and retaliated against Plaintiff as follows:

### The Parties

1. Plaintiff, Stephanie Livingston, is an adult African American female that suffers from Post Traumatic Stress Disorder ("PTSD") and an Anxiety disorder that qualify as disabilities as they affect her ability to perform everyday activities, but for which Plaintiff is able to perform the essential functions of Cocktail Waitress, with or without reasonable accommodation, a position Plaintiff held working for Defendant from June 4, 2018 through July 10, 2024.

2.      Defendant, Boardwalk 1000, LLC doing business as Hard Rock Hotel & Casino Atlantic City, is a domestic for-profit corporation duly existing under the laws of the State of New Jersey and at all times relevant was Plaintiff's employer. Defendant Boardwalk 1000, LLC maintains a registered office at 1000 Boardwalk, Atlantic City, NJ 08401.

3.      Defendant, Hard Rock Atlantic City, LLC, doing business as Hard Rock Hotel & Casino Atlantic City, is a domestic for-profit corporation duly existing under the laws of the State of New Jersey and at all times relevant was Plaintiff's employer. Defendant Hard Rock Atlantic City, LLC, maintains a registered office at 1000 Boardwalk, Atlantic City, NJ 08401.

4.      Defendant, Boardwalk 1000, LLC and Defendant, Hard Rock Atlantic City, LLC, (hereinafter individually and/or jointly referred to as "Defendant") agreed, accepted, acquiesced, adopted, and/or otherwise was/were/are bound by the actions, omissions, and conduct of its/their executives, officers, owners, managers, supervisors, employees, and agents including Tony Stolfo, Alyssa Bean, Nicholas Nelson, Valerie Torres, Richard Washington, and others.

**Jurisdiction and Venue**

5.      This Court maintains Federal Question jurisdiction over Plaintiff's Federal claims, 28 U.S.C. § 1331, and has supplemental jurisdiction over the Plaintiff's State law claims, 28 U.S.C. § 1367(a).

6.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in Atlantic County, New Jersey, which is within the geographic jurisdiction of Camden Vicinage, and Defendant reside and conduct business in Atlantic County.

### Exhaustion of Administrative Remedies

7.     Plaintiff exhausted administrative remedies before initiating this litigation by having dual filed Charges of Discrimination and having obtained a right to sue.   Specifically, on November 4, 2024, Plaintiff dual-filed Charges of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the New Jersey Division on Civil rights ("NJDCR"), setting forth the allegations that follow.  On or around August 12, 2025, the EEOC issued Plaintiff a Notice of Right to Sue.  This action was filed, initiated, and thus commenced within ninety (90) days of Plaintiff's receipt of the Right to Sue.

### Statement of Facts

8.     Defendant hired Plaintiff on or around June 4, 2018, to work as a full-time Cocktail Server on the Casino floor of Defendant's establishment.

9.     At all times, Plaintiff was a qualified to work as a Cocktail Server with good performance and little if any discipline.

10.    In August of 2022, while working in the course and scope of her employment, Plaintiff was harassed and sexually assaulted by a male.

11.    Plaintiff reported the sexual assault to Defendant's Directors, Managers, and Human Resources department, including having informed Alyssa Bean, Tony Stolfo, Nicholas Nelson, and Valerie Torres.

12.    Plaintiff sought medical treatment and was prescribed medication.

13.    Plaintiff was diagnosed as having Post Traumatic Stress Disorder ("PTSD") as a result of the sexual assault and harassment.

14.    Plaintiff informed Defendant's Human Resources department of her diagnosis, medication regimen, and harms from the sexual assault and harassment.

15.    Plaintiff made known to Defendant Directors, Managers, and Human Resources she feared further assaults and harassment and her ability to deescalate.

16.    Plaintiff maintains that after the assault and her complaints, she became an outcast, with superiors and peers treating her as an outsider.

17.    Despite Plaintiff's frequent reminders of the assault and the affects it has had on her, Defendant took little to no action and absolutely insufficient action to resolve or assuage Plaintiff's concerns or to accommodate her work.

18.    Plaintiff alleges and believes after complaining of the sexual harassment, she made an outcast by superiors and managers.

19.    Plaintiff alleges and believes that her prior sexual assault and repercussions (i.e. PTSD and Anxiety disorder) was often discussed among and with employees and even patrons about Plaintiff as a warning.

4

20.    The environment on Defendant's Casino floor can be dangerous with public access available to persons of any background, frequently drunk and intoxicated patrons, patrons losing money and sometimes large sums of money quickly, and otherwise easily inflamed patrons that present risk to workers.

21.    Defendant was often understaffed.

22.    Defendant rarely kicked patrons out, and Plaintiff has/had complained about the unwillingness of Defendant to protect Cocktail Servers by removing intoxicated and unruly patrons.

23.    On or around June 30, 2024 a patron verbally assaulted Plaintiff while Plaintiff was working as a Cocktail Server on Defendant's Casino floor.

24.    The patron started his verbal harassment of Plaintiff by telling Plaintiff that she lost her "mind."

25.    The patron called Plaintiff a "bitch" and "ugly without makeup."

26.    The patron got in Plaintiff's face and yelled and screamed personal insults because he was unhappy with the order in which Plaintiff served drinks.

27.    Plaintiff attempted to find security but the patron followed.

28.    The patron then yelled "come here you doggy bitch" and whistled and barked at Plaintiff and pointed to the ground, loud enough for others to hear.

29.    Plaintiff's PTSD was triggered during the interaction.

30.    Plaintiff sought out and found security to remove the patron.

31.    Plaintiff was removed to a back-office area where she met with Richard Washington and Tony Stolfo about what had happened.

32.    Plaintiff provided a written statement.

33.    Plaintiff provided a verbal account of what happened and during this conversation, and Plaintiff's PTSD and complaint of sexual assault were mentioned.

34.    Richard Washington and Tony Stolfo then placed Plaintiff on suspension pending investigation, and had Plaintiff escorted out by security.

35.    It is alleged and believed the patron is a frequent visitor of Defendant's facility and though he was removed that evening, he has since returned.

36.    More than two weeks later, on July 8, 2024, Alyssa Bean called Plaintiff to ask if there was anything further Plaintiff wanted to add to her statement. During this call, Plaintiff's PTSD diagnosis was mentioned.

37.    Plaintiff emailed Ms. Bean a further statement.

38.    Around July 10, 2024, Plaintiff received a phone call from Alyssa Bean informing her Defendant was terminating Plaintiff's employment for "rudeness or mistreatment of a guest."

39.    Plaintiff disputes her termination as pretext to discrimination and retaliation.

40.    Plaintiff grieved her termination through her Union.

41.    A hearing was held on August 22, 2024 and during the hearing Plaintiff complained of disparate treatment on the basis of race and disability.

42.    Examples were provided during that hearing of non-African American employees similarly situated who were not terminated for similar and sometimes worse conduct.  For example, a Karen Delgado, a Hispanic Cocktail Server at Defendant's facility, had a similar incident with a patron that included physical altercation and Ms. Delgado was not terminated.

43.    Moreover, Plaintiff reiterated that she had placed Defendant on notice of her PTSD, and her complaints of sexual assault, and that Defendant did not do anything with regard to Plaintiff's concerns with the Casino floor.

44.    On or around September 2, 2024 Plaintiff received letter notice that the grievance was denied and the termination was upheld.

45.    Plaintiff alleges that Defendant discriminated against her Plaintiff because of her sex/gender, race, and disability.

46.    Plaintiff maintains that Defendant failed to reasonably accommodate Plaintiff with regard to her PTSD and anxiety conditions, as it/they relate to her termination.

47.    Plaintiff claims that Defendant retaliated against her because she took protected activity in having complained and opposed sexual harassment.

48.    As a result of the acts and conduct complained of herein, Plaintiff has loss of income, loss of salary, out-of-pocket expense, loss of bonuses and benefits, and other economic and compensation damages.

49.    Plaintiff suffered further emotional harm, pain, suffering, humiliation, embarrassment, inconvenience, loss of reputation, and loss of enjoyment of life.

50.    As Defendant' conduct was malicious, willful, and reckless in regard to Plaintiff's rights, Plaintiff demands punitive damages.

51.    Plaintiff seeks attorney's fees and costs.

### COUNT ONE
### Gender, Sex, and Race Discrimination – Disparate Treatment
### *Title VII, 42 U.S.C. § 2000e-2(a)*

52.    Plaintiff incorporates the foregoing paragraphs in total.

53.    Defendant has the requisite number of full time employees and affects interstate commerce such that it is subject to Title VII.

54.    Plaintiff has protected classes in her gender, sex, and race.

55.    Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

56.    Title VII further provides that "it shall be an unlawful employment practice for any employer . . . controlling . . . training or retraining, including on-the-job training programs to discriminate against any individual because of [her] race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide . . . training." 42 U.S.C. § 2000e-2(d).

57.    An unlawful employment practice is established when the complaining party demonstrates that sex was a motivating factor for any employment practice, even if other factors also motivated the practice. 42 U.S.C. § 2000e-2(m). Alternatively, the adverse actions would not have occurred but for Plaintiff's sex.

58.    The Defendant subjected Plaintiff to discriminatory treatment on the basis of her race, sex, and gender.

59.    Defendant treated Plaintiff less favorably than her similarly situated employees outside her protected classes.

60.    Specifically, Defendant administered more harsh discipline, failed to protect, and terminated Plaintiff when it had done so to others outside Plaintiff's protected classes, under similar circumstances.

61.    As a direct and proximate result of Defendant's discriminatory conduct in violation of Title VII, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.

62.     Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, humiliation, embarrassment, loss of reputation, and loss of life's enjoyment.

63.     Defendant's actions were intentional, willful, and in reckless disregard for Plaintiff's Federal rights under Title VII, and thus warrant punitive damages.

64.     Plaintiff demands attorney's fees and costs.

## COUNT TWO
### Gender / Sex Discrimination - Hostile Work Environment
### *Title VII, 42 U.S.C. § 2000e-2(a)*

65.     Plaintiff incorporates the foregoing paragraphs in total.

66.     Title VII prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

67.     An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

68.     *Respondeat superior* liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed

to take prompt remedial action. <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1486 (3d Cir. 1990).

69.   Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." <u>Huston v. Procter & Gamble Paper Prods. Corp.</u>, 568 F.3d 100, 105 (3d Cir. 2009).

70.   Plaintiff is an employee and female.

71.   Defendant allowed for the existence of a hostile work environment and allowed for this hostile work environment to exist for too long a period of time such that Plaintiff was subjected to the hostile work environment to her detriment and ultimately to a tangible separation from employment.

72.   Defendant's discriminatory treatment was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating hostile or abusive.

73.   Defendant failed to exercise reasonable care to prevent gender harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of gender, failing to fully and effectively communicate the policy to its employees, and/ or failing to provide a reasonable way for Plaintiff to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by the Plaintiff.

74.     As a direct and proximate result of the hostile work environment created by the Defendant, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.

75.     Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, humiliation, embarrassment, loss of reputation, and loss of life's enjoyment.

76.     Defendant's actions were intentional, willful, and in reckless disregard for Plaintiff's Federal rights under Title VII, and thus warrant punitive damages.

77.     Plaintiff demands attorney's fees and costs.

**COUNT THREE**
**Retaliation**
***Title VII, 42 U.S.C. § 2000e-2(a)***

78.     Plaintiff incorporates the foregoing paragraphs in total.

79.     Title VII provides that it shall be unlawful employment practice for an employer:

> "(1) to … discriminate against any of his employees … because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

80.     The Supreme Court in Burlington v. N. & S.F. Ry. V. White, 548 U.S. 53, 68 (2006) held that a cause of action for retaliation under Title VII lies whenever

the employer responds to protected activity in such a way that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

81.     Plaintiff engaged in a protected activity when she complained of the sexual assault and harassment in August of 2022.

82.     Defendant took the above-described materially adverse actions against Plaintiff by having failed to reasonable protected her from a hostile work environment.

83.     Defendant terminated Plaintiff as a result or motivated by the fact that Plaintiff had complained of the sexual assault and sexual harassment.

84.     As a direct and proximate result of Defendant' retaliatory conduct in violation of Title VII, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.

85.     Plaintiff suffers and will continue to suffer emotional distress, mental anguish, loss of dignity, embarrassment, humiliation, loss of reputation, and loss of enjoyment of life.

86.     Defendant's actions were intentional, willful, and in reckless disregard for Plaintiff's Federal rights under Title VII, and thus warrant punitive damages.

87.     Plaintiff demands attorney's fees and costs.

88.     Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT FOUR
### Disability Discrimination - Failure to Accommodate and Discrimination
### *ADA/ADAAA, Sec. 12203*

89.    Plaintiff incorporates the foregoing paragraphs in total.

90.    Defendant employs the requisite number of employees and affects interstate commerce such that it is subject to Federal law and the ADA.

91.    Plaintiff is protected under the ADA as she has a mental health condition that substantially limits her ability to perform everyday activities including concentrate, focus, work, mood stability, and other conditions all as a result of her PTSD and Anxiety disorder.

92.    At all times, Defendant was aware of Plaintiff's disabilities.

93.    42 U.S.C. § 12112(a) provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability" with respect to job application procedures, hiring, advancement, discharge, compensation, job training, and other terms, conditions, and privileges of employment.

94.    42 U.S.C. § 12112(b)(5)(A) defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" unless the employer demonstrates undue hardship.

95.    At all times relevant, Plaintiff was "disabled" as defined under the law. Plaintiff Livingston was suffering from Post Traumatic Stress Disorder ("PTSD").

96.     Defendant discriminated against Plaintiff because of her disability by denying her accommodation requests.

97.     Plaintiff expressed in certain terms that, provided the accommodation, she would be able to continue performing all the functions of her role.

98.     Defendant, by and through its employees, were put on notice of Plaintiff's disability and need for reasonable accommodation.

99.     Defendant, by and through its supervisors and employees, failed to respond to Plaintiff's requests for reasonable accommodation.

100.    Defendant, by and through its supervisors and employees, failed to engage in any, let alone a meaningful conversation regarding reasonable accommodation.

101.    Defendant would suffer no undue hardship by granting Plaintiff's reasonable accommodation request, upon information and belief, similarly situated individuals were granted the accommodation Plaintiff lawfully and reasonably sought.

102.    At all times relevant, Defendant, by and through its supervisors/management, intended to unlawfully discriminate against Plaintiff by failing to provide reasonable accommodation or participate in the interactive process.

103.   Defendant further took adverse action against Plaintiff, which it did not do to similarly situated individuals that do not suffer from disabilities, by having disciplined, reprimanded, and terminated Plaintiff.

104.   Defendant was motivated and/or it was a determinative factor that Plaintiff suffers from disabilities in having terminated Plaintiff's employment.

105.   As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.

106.   Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, humiliation, embarrassment, loss of reputation, and loss of life's enjoyment.

107.   Plaintiff demands judgment for all available relief, including compensatory damages (such as emotional distress), back pay, front pay, attorneys' fees, costs, and prejudgment and post-judgment interest, and such other legal and equitable relief as the Court deems just and proper.

108.   At all relevant times, Defendant, by and through their employees and agents, acted intentionally and/or with reckless disregard of Plaintiff's rights protected by Title I of the ADA.

109.  Defendant' actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the ADA/ADAAA, warranting the imposition of punitive damages in addition to compensatory damages.

110.  Plaintiff further requests an award of reasonable attorneys' fees and costs as permitted by the ADA.

## COUNT FIVE
### Disability Discrimination – Retaliation
### *ADA/ADAAA, Sec. 12203(a)*

111.  Plaintiff incorporates the foregoing paragraphs in total.

112.  Title I of the ADA, as amended by the ADAAA, prohibits employers from retaliating against any individual for opposing disability discrimination or requesting reasonable accommodations.

113.  42 U.S.C. § 12203(a) provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." Plaintiff engaged in protected activity when she requested accommodations and opposed disability discrimination.

114.  Plaintiff engaged in protected activity when she requested accommodation and/or informed Defendant of her need for accommodation related to her PTSD and Anxiety disorder.

17

115.   Defendant retaliated against Plaintiff as follows:

a.  wrongful termination;

b.  disparate discipline;

c.  denial of leave of absence or reasonable accommodation; and,

d.  other treatment that was wrongful and disparate on the basis of disability

116.   The temporal proximity between Plaintiff's protected activity and Defendant' adverse actions, together with Defendant' antagonistic conduct, is unusually suggestive of retaliation and supports an inference of causation.

117.   Alternatively, additional evidence establishes a causal relationship between Plaintiff's protected activity and Defendant' adverse actions.

118.   As a direct and proximate result of Defendant' retaliation, Plaintiff has suffered loss of wages, including loss of back pay, loss of front pay, loss of amenities of employment and out of pocket expenses, emotional damages, embarrassment, humiliation, loss of reputation, loss of enjoyment of life, and other similar damages, all to Plaintiff's great detriment.

119.   The conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under the ADA.

120.   Plaintiff demands judgment for all available relief, including compensatory damages (such as emotional distress), back pay, front pay, attorneys'

fees, costs, and prejudgment and post-judgment interest, and such other legal and equitable relief as the Court deems just and proper.

121.   At all relevant times, Defendant, by and through their employees and agents, acted intentionally and/or with reckless disregard of Plaintiff's rights protected by the ADA and thus Plaintiff seeks punitive damages.

122.   Plaintiff further requests that her attorney's fees and costs be awarded as permitted by the ADA.

## COUNT SIX
### Sex, Gender, and Disability
### Discrimination, Hostile Work Environment, and Retaliation
### *NJLAD – N.J.S.A. § 10:5-12*

123.   Plaintiff incorporates the foregoing paragraphs in total.

124.   Defendant is subject to the New Jersey Law Against Discrimination ("NJLAD") as it has the sufficient number of employees and operates in the State of New Jersey.

125.   Plaintiff is an employee of an employer in the State of New Jersey.

126.   Defendant violated the NJLAD with regard to Plaintiff by having discriminated against, created and/or allowed for a hostile work environment, denied accommodation, and retaliated against Plaintiff as alleged *Supra*.

127.   Defendant's conduct violate N.J.S.A. 10:5-1 *et. seq.* (NJLAD).

128.   As a direct and proximate result of Defendant' discriminatory, hostile work environment, and retaliatory conduct, Plaintiff suffered and continues to suffer

economic damages including but not limited to loss of income, loss of backpay, loss of front pay, and out-of-pocket expense and costs, loss of benefits, and loss of amenities of employment.

129.   Plaintiff suffers and will continue to suffer emotional distress, mental anguish, loss of dignity, embarrassment, humiliation, loss of reputation, and loss of enjoyment of life.

130.   Defendant acted intentionally, recklessly, and/or with malice, warranting the imposition of punitive damages under the NJLAD.

131.   Plaintiff further requests an award of attorney's fees and costs as permitted by law.

<u>**COUNT SEVEN**</u>
**Race Discrimination and Disparate Treatment**
*42 U.S.C. § 1981*

132.   Plaintiff incorporates the foregoing paragraphs in total.

133.   Section 1981 prohibits race discrimination in the making and enforcing of contracts. 42 U.S.C. §1981.

134.   42 USC Section 1981(a)-(b) states in relevant part as follows:

(a) <u>Statement of equal rights</u>
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains,

penalties, taxes, licenses, and exactions of every kind, and
to no other.

(b) "Make and enforce contracts" defined
For purposes of this section, the term "make and enforce
contracts" includes the making, performance, modification,
and termination of contracts, and the enjoyment of all
benefits, privileges, terms, and conditions of the contractual
relationship. 42 U.S.C.A. § 1981.

135.   Defendant violated Section 1981 by intentionally discriminating
against the Plaintiff in a serious tangible way with respect to her compensation,
terms, conditions, and/or privileges of employment.

136.   Plaintiff's race was the but-for cause of Defendant's actions.

137.   Defendant cannot show any legitimate nondiscriminatory reason for
its/their employment practices and any reasons proffered by the Defendant for their
actions against Plaintiff are pretextual and can readily be disbelieved.

138.   Defendant acted with the intent to discriminate.

139.   Defendant acted with malice or reckless indifference to Plaintiff's
federally protected rights and as a result there should be an award of punitive
damages against Defendant.

140.   As a result of Defendant's violations of Section 1981, Plaintiff has
suffered damages including but not limited to: past and future lost wages, pain and
suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation,

emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

141.  Plaintiff respectfully seeks all available damages, including compensatory damages (such as emotional distress), back pay, front pay, punitive damages, attorneys' fees, costs, and prejudgment and post-judgment interest, jointly and severally, as against Defendant.

142.  As a result of Defendant' respective and collective unlawful acts and conduct, Plaintiff suffered and will continue to suffer damages, including but not limited to financial and economic damages, lost wages (back pay and front pay) and benefits, advancement opportunities within the company, compensatory damages, and continues to suffer same. The Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

143.  As a result of Defendant's conduct, the Plaintiff was caused to sustain serious and permanent personal injuries, including but not limited to permanent psychological injuries.

144.  Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

## Injury and Damages

As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of her career and the loss of a salary, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses and Plaintiff has also suffered future pecuniary losses, emotional pain, physical pain, humiliation, mental anguish, suffering, inconvenience, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## Jury Demand

Plaintiff requests a jury trial on all issues to be tried.

## Prayer for Relief

**WHEREFORE**, Plaintiff demands judgment against Defendant, Boardwalk 1000, LLC, *doing business as Hard Rock Hotel & Casino Atlantic City* and Defendant, Hard Rock Atlantic City, LLC, *doing business as Hard Rock Hotel & Casino Atlantic City*, jointly and severally, in an amount to be determined at the time of trial plus interest, including, but not limited to, all compensatory damages, emotional distress, punitive damages, liquidated damages, statutory damages, attorneys' fees and costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Respectfully Submitted,
DEREK SMITH LAW GROUP, PLLC

*/s/ Chris J. DelGaizo, Esquire*
CHRIS J. DEL GAIZO, ESQUIRE
*Counsel for Plaintiff*

*Attorney I.D. No. 042832005*
1628 Pine Street,
Philadelphia, PA 19103
Tel: (267) 857-7337
Fax: (215) 501-5911
Email: Chris@dereksmithlaw.com

Dated: November 3, 2025